UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANTHONY HARTLEY,

    Petitioner,

v.                                    Case No.:  2:16-cv-373-FtM-38MRM

FLORIDA ATTORNEY GENERAL
and SECRETARY, DOC,

    Respondents.
_____/

## OPINION AND ORDER[1]

Before the Court is Petitioner Anthony Hartley's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by A Person in State Custody (Doc. 1) filed on May 16, 2016, and Respondent Secretary of the Department of Correction's Response. (Doc. 8). Petitioner filed a Reply Brief to Respondent's Response. (Doc. 12).  The Petition is briefed and ripe for the Court's review.

## BACKGROUND

Petitioner was found guilty by a jury of Felony Battery (Count I) and First-Degree Burglary with Assault or Battery (Count II) on July 8, 2008.  Petitioner was sentenced to five (5) years on Count I and life imprisonment on Count II. (Ex. 31).  Petitioner's burglary

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

conviction (Count II) was overturned because the Circuit Court failed to include the lesser included jury instruction for burglary of a conveyance with a battery. (Ex. 32). Petitioner was retried on Count II and was found guilty of burglary on a conveyance with assault or battery. (Ex. 33). Petitioner was then re-sentenced to thirty (30) years. (Ex. 34).

On appeal, Petitioner's re-trial conviction was remanded for the trial court to reconsider his motion for a new trial, but the conviction was affirmed. (Ex. 35). Petitioner appealed arguing ineffective assistance of counsel because Trial Counsel failed to properly prepare him to testify. Petitioner filed a second direct appeal after the Post-conviction Court denied his motion for a new trial. (Ex. 36). The Post-conviction Court was affirmed *per curiam* and mandate issued on May 28, 2014. (Ex. 36).

On October 6, 2014, Petitioner filed a Rule 3.850 Motion alleging that he was provided ineffective assistance of counsel because counsel failed to advise him not to mention his probationary status during his testimony. The Post-conviction Court denied Petitioner's Motion on September 8, 2015. (Doc. 29). And the Second District Court of Appeal affirmed *per curiam* and mandate issued on March 30, 2016. (Doc. 23). The Respondent does not dispute the timeliness of the Petition.

## STANDARD OF REVIEW

*Antiterrorism Effective Death Penalty Act ("AEDPA")*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), governs this action. *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007). Under AEDPA, the standard of review is greatly circumscribed and highly deferential to the state courts. *Alston v. Fla. Dep't of Corr.*, 610 F.3d 1318, 1325 (11th Cir. 2010) (citations omitted). AEDPA altered the federal court's role in reviewing

state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Under the AEDPA, federal habeas relief may not be granted regarding a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (a) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (b) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). Notably, a state court's violation of state law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. *White,* 134 S. Ct. at 1702*; Carey v. Musladin,* 549 U.S. 70, 74 (2006) *(citing Williams v. Taylor,* 529 U.S. 362, 412 (2000)). The Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." *Marshall v. Rodgers,*

3

133 S. Ct. 1446, 1449 (2013) (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)). State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case. *White,* 134 S. Ct. at 1706 (quoting *Knowles v. Mirzayance,* 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall,* 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza,* 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton,* 544 U.S. 133, 134 (2005); *Bottoson v. Moore,* 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson,* 234 F.3d at 531 (quoting *Williams,* 529 U.S. at 406). The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White,* 134 S. Ct. at 1702 (quoting *Harrington v. Richter,* 562 U.S. 86 (2011)). Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to

4

decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles*, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.") (quoting *Wood v. Allen*, 558 U.S. 290, 293 (2010)).

The Supreme Court has held that review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 131 S. Ct. at 1398. The Court is limited to reviewing only the record before the state court when it rendered its order. *Id.*

### Standard for Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id.* This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. *Burt*, 134 S. Ct. at 13 (citing *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)).

5

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89. In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).

As to the prejudice prong of the *Strickland* standard, Petitioner's burden to demonstrate prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the [Petitioner] of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That is, "[t]he [Petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Even an unreasonable error by counsel does not necessitate the setting aside of a judgment if the error did not affect the judgment. *Id.* at 692. Strategic decisions rendered by counsel after a complete review of relevant laws and facts are "virtually unchallengeable." *Id.* at 690-91. Petitioner cannot meet his burden by showing that counsel could have chosen a different course at trial. *White v. Singletary,* 972 F.2d 1218,

1220-21 (11th Cir.1992). Rather, Petitioner must show that counsel did not do what was constitutionally compelled to provide adequate counsel. Accord *Chandler v. United States,* 218 F.3d 1305, 1313 (11th Cir.2000) (*en banc*) (*quoting Burger v. Kemp,* 483 U.S. 776, 794, (1987)); *Hill v. Attorney Gen., Fla.*, No. 805-CV-911-T-30EAJ, 2008 WL 786652, at *3 (M.D. Fla. Mar. 20, 2008).

### *Exhaustion and Procedural Default*

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" *Duncan v. Henry,* 513 U.S. 364, 365 (1995) (*citing Picard v. Connor*, 404 U.S. 270, 275-76 (1971)). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998). In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims). Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman*, 501

U.S. at 750. If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994).

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. "To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999) (internal quotation marks omitted). To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

The second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "[t]o be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324.

## **DISCUSSION**

Petitioner raises two grounds for relief:

> Ground One: Trial Counsel rendered ineffective assistance by failing to fully and properly advise and prepare Petitioner to testify in violation of Petitioner's 5th, 6th, and 14th Amendment rights.
>
> Ground Two: Trial Counsel was ineffective for failing to impeach the victim with prior inconsistent trial testimony.

Respondent concedes that Ground One is exhausted but argues that Ground Two is an unexhausted claim.

### *GROUND ONE*

Petitioner argues that Trial Counsel failed to fully and properly prepare him to testify. Trial Counsel informed Petitioner that he would question him about his four (4) prior felony convictions, but never mentioned anything about his probationary status. Petitioner admitted that he was present at the incident and witnessed an unknown man approach the victim's car, reach in the window and hit the victim with his fist. (Doc. 1 at 3). The victim was then taken from her vehicle and beaten and kicked by the unknown assailant in the apartment parking lot. (Doc. 1 at 3). Petitioner testified that he watched the assault then fled the neighborhood when the police arrived because he was on probation and could be violated for being in a high crime neighborhood known for drugs and prostitution. (Doc. 1 at 3).

Petitioner argues that he was prejudiced by his testimony admitting that he was on probation. Petitioner believes that had Trial Counsel counseled him not to reveal his probationary status, the jury would have reached a different conclusion at trial. (Doc. 1 at 3).

During the trial Petitioner was questioned by his Trial Counsel as follows:

9

Q. "Okay, so you go, and you see that this woman is getting in a fight with some man."

A. "Yes, sir."

Q. "What happens next?"

A. "Well, like I said, everybody stand out there watching and ain't nobody participating or stopping it. Because, you know, you don't get into nothing if it don't concern you."

"So we sat out there and watched it, watched it went down."

Q. "So how long did it go on for?"

A. "Say about ten minutes."

Q. "Okay. So after this happens, you see this girl getting — get beat up, where do you go?"

A. "Well I sat there for a minute until the police arrived. Because I was on probation, I ain't supposed to be around that type if area, you know? The area I lived in, I ain't supposed to be in the area, because I just got out on probation. So I walked off." (Ex. 21 at 250-51).

In his Order denying Petitioner's Rule 3.850 Motion the Post-conviction Judge found:

> [Petitioner] argues that his counsel was ineffective for failing to advise him not to answer a question in a certain manner. At trial, [Petitioner] argued that he did not batter the victim, but merely observed the battery. During his direct testimony, counsel asked [Petitioner] why he left the area after witnessing the assault on the victim, and [Petitioner] answered that he was on probation and was not supposed to be in that type of area. [Petitioner] claims that his counsel should have advised him not to answer the question in this manner, because it "unnecessarily notified the jury that he

10

was on probation and in high crime area at the time of the offense." He contends that his counsel should have advised him to answer that question and other questions on cross-examination without mentioning his probationary status or prison status. Due to counsel's alleged lack of preparation and advice, [Petitioner] revealed his probationary history to the jury, which according to [Petitioner], caused the jury to convict him based on his character and propensity to commit crimes.

(Doc. 29 at ¶ 7).

In denying Petitioner's Post-conviction Motion the Post-conviction Judge reasoned:

> [a]fter reviewing the record, the Court finds that [Petitioner] cannot demonstrate prejudice, in that he cannot show that there is a reasonable probability that the outcome of the trial would have been different had his counsel advised him not to mention he was on probation or that he was recently released from prison. The record reflects that the [Petitioner] had already testified that he had previously been convicted of four convictions, testimony that he does not argue was prejudicial; therefore, any testimony regarding his probation or release from prison would not amount to prejudice, because being released from prison or placed on probation can be a logical consequence of having had four prior felony convictions. Furthermore, it is evident from his testimony that [Petitioner] was using his probationary status as part of his defense theory that he was not the assailant and did not get involved, because he did not want to risk his probationary status. Lastly, there was ample evidence in the record for the jury to determine [Petitioner]'s guilt; therefore, based on the evidence available to the jury, there is no reasonable probability that the outcome of the trial would have been different had he not mentioned being released from prison or being on probation. Accordingly, as there existed no prejudice here, the Court does not have to make a determination of whether counsel was ineffective in failing to advise [Petitioner] not to mention his probation or release from prison.

(Ex. 29 at ¶ 13).

Upon review of the Record, Petitioner fails to establish *Strickland's* prejudice prong. Petitioner argues that had he been counseled not mention that he was on probation, the jury would have had a better opinion of him and found him not guilty. Contrary to Petitioner's argument, the jury had already properly learned that [Petitioner] had four (4) prior felony convictions, so the fact that the jury learned he was also on probation was not surprising. Petitioner used the same tactic during his first trial where he testified that he fled the scene after the police arrived because he was on probation and could be violated for being in a high crime neighborhood. (Ex. 27 at 464-65). Petitioner was aware from his previous trial that he would testify that he left the scene of the crime because he was on probation.

The record strongly indicates that Petitioner was using his probationary status as part of a defense strategy explaining why he left the scene after the police arrived. Without disclosing his probationary status, Petitioner could not explain why he left the scene after the police arrived. Therefore, his probationary status was not prejudicial to his case, because it supported his defense explaining why he fled.

There was also substantial evidence presented to the jury that exposed Petitioner's guilt. The victim was very familiar with the Petitioner; they were roommates at the time of the assault, had a physical relationship, and she identified him as her assailant. (Ex. 36 at 204-05). In addition, Jorvousia Palmer, an independent eyewitness, identified the Petitioner as the assailant to the police. On the night of the assault Palmer intervened and broke up the fight and called 911 so she was familiar with the Petitioner's appearance from being actively involved. Palmer testified at both trials that Petitioner was the man who attacked the victim. (Ex. 28 at 231-32; Ex. 36 at 232-40). With such evidence arrayed

against him, Petitioner cannot show with a reasonable probability that, but for his testimony regarding his probationary status, the outcome of the trial would have been different. Thus, Petitioner fails to establish that Trial Counsel's actions prejudiced his case under *Strickland*.

## *GROUND TWO*

Petitioner argues that Trial Counsel was ineffective for failing to impeach the victim with her prior trial testimony. In the first trial, the victim testified that Petitioner hit her with a 2 x 4 wooden board and a bicycle. Whereas in the second trial, the victim testified that Petitioner hit and kicked her. Petitioner argues that by impeaching the victim with her testimony that he hit her with a 2 x 4 in the first trial would damage her credibility with the jury in the second trial. Respondent counters that Ground Two is not exhausted.

Petitioner admits that Ground Two is not exhausted and is procedurally barred in state court under Rule 3.850. However, Petitioner argues the procedural bar should not be imposed because his failure to file is not procedurally barred under *Martinez v. Ryan*, 132 S. Ct. 1309, 1318-20 (2012). (Doc. 1 at 6). Petitioner contends that Ground Two is substantial because the impeachment of the victim would have damaged her credibility and changed the entire view of the facts.

In *Martinez,* the Supreme Court announced a narrow, equitable, and non-constitutional exception to the holding in *Coleman v. Thompson*, 756 F. 3d 722, 750 (11th Cir. 1991) (holding that ineffective assistance of collateral counsel cannot serve as cause to excuse a procedural default) in the limited circumstances where (1) a state requires a prisoner to raise ineffective-trial-counsel claims at an initial-review collateral proceeding; (2) the prisoner failed properly to raise ineffective-trial-counsel claims in his state initial-

13

review collateral proceeding; (3) the prisoner did not have collateral counsel or his counsel was ineffective; and (4) failing to excuse the prisoner's procedural default would cause the prisoner to lose a "substantial" ineffective-trial-counsel claim. *Lambrix v. Sec'y, Fla. Dep't of Corr.*, 756 F.3d 1246, 1260 (11th Cir. 2014) (*citing Arthur v. Thomas,* 739 F.3d 611, 629 (11th Cir. 2014) (citing *Martinez,* 132 S. Ct. at 1318)). In such a case, the Supreme Court explained there may be "cause" to excuse the procedural default of the ineffective-trial-counsel claim. *Martinez,* 132 S. Ct. at 1319. Subsequently, the U.S. Supreme Court extended *Martinez* to cases where state law technically permits ineffective-trial-counsel claims on direct appeal, but state procedures make it "virtually impossible" to raise ineffective-trial-counsel claims on direct appeal. *See Trevino v. Thaler,* 569 U.S. 413, 422-23 (2013).

Importantly, the *Martinez* rule is expressly limited to attorney errors in initial-review collateral proceedings: "[T]he holding in *[Martinez]* does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." 132 S. Ct. at 1320 ("The rule of *Coleman* governs in all but the limited circumstances recognized here."); *see also Trevino,* 133 S. Ct. at 1921 (applying *Martinez*'s "narrow exception" to *Coleman*'s general rule).

Petitioner's *Martinez* claim fails because he cannot raise a substantial ineffective-trial-counsel claim. Trial Counsel's decision to not impeach the victim for not testifying that Petitioner struck her with a 2 x 4 in the second trial was not prejudicial. Contrary to Petitioner's claim, testimony he hit her with a 2 x 4 or bicycle would have made the assault appear more vicious and would have more than likely hurt his position with the jury.

Further, whether to impeach a witness is a strategic decision. Considering the record before the Court, Trial Counsel's decision not to impeach the victim was a reasonable strategic decision and did not rise to the level of a constitutional deficiency. See *Stratis v. Sec'y, Dep't of Corr.*, No. 8:16-CV-141-T-36AAS, 2019 WL 1330835, at *9 (M.D. Fla. Mar. 25, 2019) ("strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct"). Based upon the evidence in the record, the outcome of the trial would not have been different if Trial Counsel had impeached the victim with her prior trial testimony. Thus, Petitioner's *Martinez* argument fails, and Ground Two is procedurally barred.

## CONCLUSION

In Ground One, Petitioner failed to show that Trial Counsel's actions prejudiced him under *Strickland* and Ground Two is procedurally barred as unexhausted. Petitioner's habeas claim fails to set forth any grounds for relief.

## CERTIFICATE OF APPEALIBILITY

Petitioner is not entitled to a certificate of appealability. A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 184 (2009). "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)

or, that "the issues presented were adequate to deserve encouragement to proceed further", *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003)(citations omitted). Petitioner has not made the requisite showing in these circumstances.

Accordingly, it is now

**ORDERED:**

1. Petitioner Anthony Hartley's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by A Person in State Custody (Doc. 1) is **DENIED**.

2. The Clerk of Court shall enter judgment accordingly, terminate any pending motions and deadlines and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida this 27th day of August 2019.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-2

Copies: All Parties of Record